T.C. Memo. 2011-72

UNITED STATES TAX COURT

RALPH AND DIANNE SANDBERG, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29806-08.              Filed March 28, 2011.

Jon Noel Dowat, for petitioners.

Julie A. Jebe and H. Barton Thomas, Jr., for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  Petitioners (the Sandbergs) filed Forms
843, Claim for Refund and Request for Abatement, for tax years
1993, 1995, 1996, and 2002 seeking abatement of interest.  On
June 9, 2008, respondent (the IRS) issued a notice of
determination to Ralph Sandberg disallowing the claims; the IRS

sent an identical notice of determination to Dianne Sandberg.[1]

The Sandbergs petitioned for review under section 6404(h).[2]  At

issue is whether the determination not to abate interest was an

abuse of discretion.  Sec. 6404(h)(1); Woodral v. Commissioner,

112 T.C. 19, 23 (1999).  As explained below, we find that it was

not.  The Sandbergs have not shown that the IRS had authority to

abate interest for tax years 1993, 1995, and 1996 because they

failed to identify an error or delay by the IRS in performing a

ministerial act.  And they have not shown that the IRS had

authority to abate interest for tax year 2002 because they failed

to identify an error or delay by the IRS in performing a

ministerial or managerial act.

FINDINGS OF FACT

Some facts have been stipulated by the parties and are so

found.[3]  The stipulation of facts and its attached exhibits are

incorporated by reference.

---

[1]Although the IRS sent separate notices to Dianne and Ralph
Sandberg, the underlying liabilities are joint liabilities.

[2]All section references are to the Internal Revenue Code, as
effective for the requests for abatement at issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure,
unless otherwise indicated.

[3]But see infra note 8 and accompanying text (declining to
adopt paragraph 19 of the stipulation of facts because it
conflicts with the stipulated documents and appears to be an
error).

The Sandbergs had unpaid tax liabilities for a number of tax years, including the years for which they request abatement of interest. The IRS filed notices of federal tax lien for these liabilities; some were filed in Ralph's name, some in Dianne's name, and some in both names. The IRS filed some of the notices in Aitkin County, Minnesota, and some in Anoka County, Minnesota.

In Anoka County, the IRS recorded the following notices of federal tax lien.[4] On December 28, 1999, Revenue Officer Clyde Boyer filed a notice for tax years 1993, 1994, 1995, and 1996 in Ralph's name (as "Ralph Sandberg"). For 1993, 1995, and 1996, the notice stated unpaid balances totaling $418,328.77. For 1994, the notice stated an unpaid balance of $175,741. On May 16, 2007, Boyer recorded an amendment reducing the total unpaid balance for 1993, 1995, and 1996 to $129,351.66; the amendment reduced the unpaid balance for 1994 to $63,346.60.[5] On December 6, 2005, Revenue Officer Sue Tucker filed a notice for tax years 1993, 1994, 1995, and 1996 in Dianne's name (as "Dianne E Sandberg"). For 1993, 1995, and 1996, the notice stated unpaid balances totaling $149,774.18. For 1994, the notice stated an unpaid balance of $67,243.39. On May 16, 2007, Tucker recorded

_____

[4]Besides the notices discussed, the IRS also filed notices of federal tax lien for unpaid liabilities for tax years 1997 and 1998.

[5]It is unclear why the IRS amended this lien (and the other liens discussed below).

an amendment reducing the total unpaid balance for 1993, 1995, and 1996 to $133,822.02; the amendment reduced the unpaid balance for 1994 to $64,346.60.  Finally, on December 6, 2005, Revenue Officer Elizabeth Santos-Kraushaa filed a notice in both names (as "Ralph J & Diane E Sandberg") for tax year 2002.  The notice stated an unpaid balance for 2002 of $6,933.49.  The table below summarizes the notices filed in Anoka County for 1993, 1995, 1996, and 2002.

| Tax Years (in issue) | Name on Notice of Federal Tax Lien | Initial Amount | Amended Amount |
|---|---|---|---|
| 1993, 1995, & 1996 | Ralph Sandberg | $418,328.77 | $129,351.66 |
| 1993, 1995, & 1996 | Dianne E Sandberg | 149,774.18 | 133,822.02 |
| 2002 | Ralph J & Diane E Sandberg | 6,933.49 | n/a |

In Aitkin County, the IRS recorded the following notices of federal tax lien.  On March 7, 2001, Revenue Officer Clyde Boyer filed a notice for tax years 1993, 1994, 1995, and 1996 in Ralph's name (as "Ralph J Sandberg").  For 1993, 1995, and 1996, the notice stated unpaid balances totaling $417,367.77.[6]  For 1994, the notice stated an unpaid balance of $175,741.  On June 25, 2007, Boyer recorded an amendment reducing the total unpaid balance for 1993, 1995, and 1996 to $129,351.66; the amendment

---

[6]The parties have not explained why the notices filed in Aitkin County and Anoka County state slightly different unpaid balances.

reduced the unpaid balance for 1994 to $63,346.60.  On December 12, 2005, Revenue Officer Sue Tucker filed a notice for tax years 1993, 1994, 1995, and 1996 in Dianne's name (as "Dianne E Sandberg").  For 1993, 1995, and 1996, the notice stated unpaid balances totaling $149,774.18.  For 1994, the notice stated an unpaid balance of $67,243.39.  On May 14, 2007, Tucker recorded an amendment reducing the total unpaid balance for 1993, 1995, and 1996 to $129,351.66; the amendment reduced the unpaid balance for 1994 to $63,346.60.  Finally, on December 12, 2005, Revenue Officer Elizabeth Santos-Kraushaa filed a notice in both names (as "Ralph J & Diane E Sandberg") for tax year 2002.  The notice stated an unpaid balance for 2002 of $6,933.49.  The table below summarizes notices filed in Aitkin County for 1993, 1995, 1996, and 2002.

| Tax Years (in issue) | Name on Notice of Federal Tax Lien | Initial Amount | Amended Amount |
|---|---|---|---|
| 1993, 1995, & 1996 | Ralph J Sandberg | $417,367.77 | $129,351.66 |
| 1993, 1995, & 1996 | Dianne E Sandberg | 149,774.18 | 129,351.66 |
| 2002 | Ralph J & Diane E Sandberg | 6,933.49 | n/a |

The Sandbergs encountered difficulties in borrowing money to pay their tax liabilities.  They arranged to refinance some of their real property.  A closing with the lender was scheduled for April 2, 2004, but the closing fell through.  Other lenders

turned them down.  The Sandbergs received a letter from one
stating that the Sandbergs did not qualify under the lender's
credit guidelines "Due to their current tax liens and low credit
scores".  The Sandbergs eventually received financing on or
around June 25, 2007, and they paid the IRS $312,449.44,
satisfying their liabilities for tax years 1993, 1995, 1996, and
2002.[7]  The IRS released the tax liens on July 11, 2007.[8]

On January 7, 2008, the IRS received Forms 843 for tax years
1993, 1995, 1996, and 2002.  Both Ralph and Dianne Sandberg
signed the Forms 843.  In the area for "Explanation and
additional claims", each form contained language similar to the
following (which appeared on the form requesting abatement for
tax year 1993):  "See attached letter and report to TIGTA of the
effect of the IRS erroneously and unlawfully filing more than
$1,703,000.00 of federal tax liens when the taxpayers only owed
$61,000.00."  In their brief, the Sandbergs assert that they
attached documents, including a letter they supposedly wrote to

---

[7]The $312,449.44 payment included liabilities for years
other than 1993, 1995, 1996, and 2002, which are the 4 years for
which the Sandbergs requested interest abatement.

[8]Paragraph 19 of the stipulation of facts says that the
liens "were released on June 11, 2007, shortly after the amounts
due and owing were paid in full by petitioners." (Emphasis
added.)  We have found, however, that the liens were released on
July 11, 2007.  The date appearing on the lien documents is July
11, 2007.  And the date on which the stipulation says the liens
were released, June 11, 2007, is before the Sandbergs satisfied
their tax obligations on or around June 25, 2007.

the Treasury Inspector General for Tax Administration (TIGTA), to these forms. The IRS disputes that the attachments were included with the forms and objects to their admission. As we explain below, we exclude the purported attachments from evidence because the Sandbergs failed to authenticate the documents. See infra part I.A.

The IRS issued two notices of determination, one to Ralph Sandberg and one to Dianne Sandberg. Each notice disallowed the Sandbergs' claims. The Sandbergs, residents of Minnesota, challenged these determinations by filing a petition with the Tax Court. They claim that they were unable to pay their tax liabilities because they could not secure financing, an inability they attribute to purported errors or delays by the IRS regarding the notices of federal tax lien. They argue that because of those purported errors or delays, they are entitled to abatement of interest.

OPINION

I. Evidentiary Issues

A. Exhibits 2-J and 12-P

The parties stipulated that the documents marked for identification as Exhibit 2-J are "copies of petitioners' Forms 843, Claim for Refund and Request for Abatement, with respect to taxable years 1993, 1995, 1996, and 2002." Exhibit 2-J is four pages long and consists of copies of the Forms 843 and no other

documents.  The stipulation does not state whether other documents were attached to the Forms 843.

At the commencement of trial, the Sandbergs objected to Exhibit 2-J.  They claim that it was incomplete because it did not include copies of several letters that they claim were attached to the Forms 843.  The IRS denies that the letters were attached to the Forms 843.  The Sandbergs offered Exhibit 12-P, which is made up of copies of the Forms 843 and copies of the letters that the Sandbergs claim they attached to the Forms 843.

The Sandbergs' assertion that the letters were attached to the Forms 843 is not inconsistent with the stipulation, which does not address the issue.  And their objection that Exhibit 2-J is incomplete, raised at the commencement of the trial, was timely.  See Rule 91(d).  But, as we explain below, the Sandbergs' objection, which we construe to be an objection under rule 106 of the Federal Rules of Evidence, fails because they did not offer any evidence to show that the letters were attached to the Forms 843.

Under rule 106 of the Federal Rules of Evidence, when a party introduces part of a writing, the adverse party may require the introduction of any other part of the writing which should, in fairness, be considered with it.  But the adverse party must authenticate the part it seeks to introduce.  Fed. R. Evid. 901 and 902.  Authenticity is established by evidence sufficient to

support a finding that the document is authentic. Fed. R. Evid. 901(a). A document can be authenticated through the testimony of a witness who knows that the document is what it is claimed to be. Fed. R. Evid. 901(b)(1). The Sandbergs claim that the letters were attached to the Forms 843. Thus, they were required to present evidence that the letters were attached to the Forms 843. For example, they could have adduced the testimony of a witness who knew that the letters were attached to the Forms 843. Dianne Sandberg cosigned (with her husband) all of the Forms 843 and some of the letters. Myster signed the rest of the letters. Even though the Sandbergs called Myster and Dianne Sandberg as witnesses, neither testified that the letters were actually attached to the Forms 843. Because the Sandbergs have failed to establish that the letters were attached, we admit into evidence Exhibit 2-J, the Forms 843 without the letters. We exclude from evidence Exhibit 12-P, the Forms 843 with the letters.

B. IRS Hearsay Objections

The IRS raised hearsay objections to two portions of Myster's testimony. The IRS first objects to Myster's recounting of what the Sandbergs and employees of a company named Tax Resolution told him about the Sandbergs' tax difficulties. The Sandbergs do not offer this testimony as proof of the matter asserted by the declarant--that the Sandbergs had tax difficulties--but as background to how Myster came to represent

them.  Thus the testimony is not hearsay, and the objection is overruled.[9]  See Fed. R. Evid. 801(c).

The IRS also objects to Myster's testimony about statements a TIGTA agent supposedly made to him.[10]  The objection is sustained because the Sandbergs offer the evidence to prove the matters asserted by the declarant--that the declarant was a TIGTA agent and that the IRS made errors--and no exception applies. See Fed. R. Evid. 802.

    C.    <u>Motion To Strike Parts of Petitioners' Opening Brief</u>

The IRS objected to our consideration of documents the Sandbergs attached to their opening brief and moved that we strike the documents and the parts of the brief referring to the documents.  The documents are:  (i) copies of several newspaper articles; (ii) a copy of a Form 911, Application for Taxpayer Assistance Order (ATAO); (iii) copies of letters Myster supposedly sent to the IRS about subordinating the liens; (iv) copies of several Forms 12277, Application for Withdrawal of Filed Form 668(Y), Notice of Federal Tax Lien; (v) copies of the documents contained in Exhibit 12-P (the purported letter to TIGTA and the purported letters to the IRS regarding the tax

---

[9]The IRS did not raise a relevance objection.

[10]Specifically, Myster testified that a TIGTA agent agreed to talk to the IRS about amending the liens in May of 2007.

liens);[11] and (vi) what appear to be copies of several letters from the Taxpayer Advocate Service regarding the Sandbergs' case.

Statements in a party's brief and documents attached to a party's brief are not evidence. Rule 143(c). We will not consider the documents attached to the brief that are not in evidence. See Godwin v. Commissioner, T.C. Memo. 2003-289, affd. 132 Fed. Appx. 785 (11th Cir. 2005). The motion to strike the documents not in evidence and parts of the Sandbergs' opening brief referring to the documents will be granted.

II. Abatement of Interest

Section 6404(e)(1) authorizes the IRS to abate the assessment of interest in some situations. We have jurisdiction to determine if the failure of the IRS to abate interest was an abuse of discretion.[12] See sec. 6404(h)(1). The burden of proof is on the taxpayer. Rule 142(a). To prevail, the taxpayer must show that the IRS abused its discretion. The IRS abused its

_____

[11]As discussed above, we exclude Ex. 12-P from evidence because the Sandbergs failed to authenticate the documents. See supra part I.A.

[12]The Sandbergs argue that we should exercise "plenary jurisdiction" and implement a de novo standard of review. Petrs.' Br. at 7. Our jurisdiction is "strictly limited by statute" and we "may not enlarge upon that statutory jurisdiction." Breman v. Commissioner, 66 T.C. 61, 66 (1976); see also sec. 7442. Here, sec. 6404(h)(1) is our only source of jurisdiction to abate interest. See 508 Clinton St. Corp. v. Commissioner, 89 T.C. 352, 354-357 (1987) (holding, before Congress enacted sec. 6404(h), we lacked jurisdiction). Sec. 6404(h)(1) limits our jurisdiction to determining if the IRS abused its discretion.

discretion if it exercised that discretion arbitrarily, capriciously, or without sound basis in fact or law. See <u>Woodral v. Commissioner</u>, 112 T.C. at 23.

Congress amended section 6404(e)(1) for tax years beginning after July 30, 1996. Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301, 110 Stat. 1457 (1996). Thus preamendment section 6404(e)(1) applies to the Sandbergs' claims for tax years 1993, 1995, and 1996, and postamendment section 6404(e)(1) applies to their claims for tax year 2002.

A.    <u>Tax Years 1993, 1995, and 1996</u>

For tax years 1993, 1995, and 1996, section 6404(e)(1) provided:

In the case of any assessment of interest on--

(A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or

(B) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such an officer or employee being erroneous or dilatory in performing a ministerial act,

the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

The Sandbergs did not frame their argument in the statute's terms.[13]  Their brief neither cites section 6404 nor specifically identifies any act as a ministerial act.  As we explain below, the Sandbergs--who have the burden of proof--have not shown that the IRS abused its discretion because they have not shown an error or delay in performing a ministerial act.

Section 301.6404-2T(b)(1), Temporary Income Tax Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), defines "ministerial act" generally as follows:

> a procedural or mechanical act that does not involve
> the exercise of judgment or discretion, and that occurs
> during the processing of a taxpayer's case after all
> prerequisites to the act, such as conferences and
> review by supervisors, have taken place. A decision
> concerning the proper application of federal tax law
> (or other federal or state law) is not a ministerial
> act.

Thus a ministerial act is an act (i) that is procedural or mechanical, (ii) that does not involve exercising judgment or discretion, (iii) that is not a decision about how to apply federal or state law, and (iv) that occurs (a) during the processing of a taxpayer's case and (b) after all prerequisites

---

[13]For example, they state that they "argue for a change in existing law such that when the [IRS], through its employees, demonstrates 'gross indifference' towards any taxpayer then the * * * [IRS] may not profit, especially in the assessment of penalties and interest, from that 'gross indifference'."  Petrs.' Br. at 23.  As discussed above, our review is limited to whether the IRS abused its discretion in determining not to abate interest.  See supra note 12 and accompanying text.

to the act have taken place. The Sandbergs have not identified an error or delay in performing a ministerial act.

The decision to file a notice of federal tax lien is not a ministerial act because it involves exercising judgment and discretion. See, e.g., Internal Revenue Manual pt. 5.12.2.4.1 (May 20, 2005) (stating criteria the IRS uses to decide whether to file a notice of federal tax lien).

Although the Sandbergs claim the notices have incorrect unpaid balances, they have not shown that the amounts were in error.[14] They have also not shown that if such an error existed, it was not an error in applying federal or state law.

The Sandbergs claim that the IRS committed errors by "duplicating" some of the notices of federal tax lien.[15] The IRS on the other hand claims that notices were filed in Aitkin and Anoka Counties because the Sandbergs owned property in both places. The Sandbergs have neither refuted this claim nor otherwise offered a legal or factual basis to conclude the filings were in error.

---

[14]In their brief, the Sandbergs assert that the IRS based the initial lien filings on amounts shown as tax on returns the IRS prepared on their behalf. Petrs.' Br. at 2. The Sandbergs' brief asserts that the amounts were erroneous, but they have not introduced evidence showing that the amounts were erroneous.

[15]For example, for tax years 1993, 1995, and 1996, the IRS filed notices in both Aitkin and Anoka Counties in Ralph's name and in Dianne's name.

Finally, the Sandbergs claim that the IRS committed errors by failing to subordinate the liens and failing to withdraw the notices of federal tax lien.  The IRS can issue a certificate of subordination, which subordinates the tax lien on specific property.  Sec. 6325(d).  But doing so is not a ministerial act: it involves judgment and discretion.  See sec. 301.6325-1(d)(1), Proced. & Admin. Regs. ("A District Director may, in his discretion, issue a certificate of subordination of a lien * * * .").  The IRS can also withdraw a notice in certain circumstances, but deciding to do so involves judgment and discretion.  See sec. 6323(j)(1); sec. 301.6323(j)-1(b), Proced. & Admin. Regs. (stating circumstances under which the IRS is authorized to withdraw a notice).

Section 6404(e)(1), as in effect for interest accruing with respect to payments for tax years beginning before July 31, 1996, authorizes the IRS to abate interest on a payment of tax to the extent that an error or delay in such payment is attributable to an officer or employee of the IRS' being erroneous or dilatory in performing a ministerial act.  The Sandbergs have not shown that the IRS committed such an error or delay.

B.  Tax Year 2002

For tax year 2002, section 6404(e)(1) provided:

In the case of any assessment of interest on--

>     (A) any deficiency attributable in whole or in part to any unreasonable error or delay

by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, or

(B) any payment of any tax described in section 6212(a) to the extent that any unreasonable error or delay in such payment is attributable to such an officer or employee being erroneous or dilatory in performing a ministerial or managerial act,

the Secretary may abate the assessment of all or any part of such interest for any period.  For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

Thus Congress made two changes to the text of section 6404(e)(1). First, it inserted "unreasonable" before error.  And, second, it replaced "in performing a ministerial act" with "in performing a ministerial or managerial act".

At issue is whether the Sandbergs have shown an unreasonable error or delay by the IRS in performing a ministerial or managerial act.  As we explain below, they have not.

The definition of a ministerial act did not change under amended section 6404(e).  Compare sec. 301.6404-2(b)(2), Proced. & Admin. Regs. (giving postamendment definition), with sec. 301.6404-2T(b)(1), Temporary Income Tax Regs., supra (giving preamendment definition).  The Sandbergs allege no additional errors for 2002.  Thus, as with tax years 1993, 1995, and 1996, the Sandbergs have not shown an unreasonable error or delay in

performing a ministerial act. See supra part II.A. The remaining issue is whether they have shown an unreasonable error or delay in performing a managerial act.

Section 301.6404-2(b)(1), Proced. & Admin. Regs., defines "managerial act" as follows:

> an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel. A decision concerning the proper application of federal tax law (or other federal or state law) is not a managerial act. Further, a general administrative decision, such as the IRS's decision on how to organize the processing of tax returns or its delay in implementing an improved computer system, is not a managerial act for which interest can be abated under paragraph (a) of this section.

Thus a managerial act is an act (i) that is an administrative act, (ii) that occurs during the processing of a taxpayer's case, and (iii) that involves either (a) losing records (temporarily or permanently) or (b) exercising judgment or discretion relating to managing personnel.

The Sandbergs have not shown an unreasonable error or delay in performing a managerial act. Neither filing notices of federal tax lien nor deciding whether to subordinate or withdraw notices involves losing records or exercising judgment about managing personnel. The Sandbergs complain about the number of revenue officers that handled their case but allege no specific error in exercising judgment or discretion in managing personnel.

Section 6404(e)(1), as in effect for interest accruing with respect to payments for tax years beginning after July 30, 1996, authorizes the IRS to abate interest on a payment of tax to the extent that an error or delay in such payment is attributable to an officer or employee of the IRS' being erroneous or dilatory in performing a managerial or ministerial act.  The Sandbergs have not shown that the IRS committed such an error.

## III. The Sandbergs' Request for Sanctions Under Section 6673

The Sandbergs request that the Court impose sanctions under section 6673.  Section 6673(a)(2) provides that if an attorney "[multiplies] the proceedings * * * unreasonably and vexatiously", the Court may impose excess costs, expenses, and attorney's fees.  The Sandbergs argue that we should impose sanctions because the IRS counsel refused to stipulate that the Sandbergs' purported letter to TIGTA was attached to the Forms 843.  The parties are not required to stipulate legitimately disputed facts.  Cf. Rule 91(a)(1) ("Included in matters required to be stipulated are * * * all documents and papers or contents or aspects thereof * * * which fairly should not be in dispute.").  Failing to do so does not justify imposing sanctions under section 6673.  Cf. Dixon v. Commissioner, 132 T.C. 55 (2009) (awarding costs).  The Sandbergs' request for sanctions will be denied.

IV.  Summary

Because the Sandbergs--who have the burden of proof--have failed to show that section 6404(e)(1) authorized the IRS to abate the assessment of interest, they have not shown that the IRS abused its discretion by declining to do so.

We have considered all arguments made by the parties.  We conclude that those not mentioned are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.