T.C. Memo. 2016-176

UNITED STATES TAX COURT

AJAI PRAKASH AND SWARN PRAKASH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28170-14.                     Filed September 20, 2016.

Ajai Prakash, pro se.

<u>William J. Gregg</u> and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent issued a final determination denying petitioners' claim to abate interest on their 2003, 2004, and 2005 Federal income tax liabilities.  Petitioners timely filed a petition to this Court under section

**[*2]** 6404(h).[1]  The sole issue for decision is whether respondent abused his discretion by denying petitioners' claim to abate interest.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners resided in New York when they filed their petition.

At all relevant times, petitioner Ajai Prakash owned 100% of the outstanding shares of stock in Sutphin Drugs, Inc. (Sutphin), a subchapter S corporation.  Petitioners filed joint Federal income tax returns for the taxable years 2003, 2004, and 2005 on January 20 and 30, 2006, and February 20, 2007, respectively.[2]  The following table summarizes the tax reported due by petitioners on their returns, payments made by petitioners, and penalties and interest added to petitioners' account:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners were granted extensions of time to file their 2003, 2004, and 2005 tax returns until August 15, 2004, October 15, 2005, and October 15, 2006, respectively.

[*3]

| Item | TY 2003 | TY 2004 | TY 2005 |
|---|---|---|---|
| Tax reported on return | $12,614.00 | $9,175.00 | $9,436.00 |
| Penalty for not prepaying | 167.16 | 71.00 | 246.21 |
| Penalty for late filing | 1,595.70 | 567.18 | 1,455.30 |
| Penalty for late payment | 780.12 | 157.55 | 358.89 |
| Interest | 871.60 | 181.18 | 502.43 |
| Withholding | (5,522.00) | (6,024.00) | (2,968.00) |
| Payment with return | (7,092.00) | (3,222.00) | (5,838.00) |
| Balance due | 3,414.58 | 905.91 | 3,192.83 |

Petitioners paid the above-listed balances due for the taxable years 2003, 2004, and 2005 on March 3 and 17, 2006, and April 3, 2007, respectively.

In early 2008 the Internal Revenue Service (IRS) initiated an audit of Sutphin and examined Sutphin's Forms 1120S, U.S. Income Tax Return for an S Corporation, for the taxable years 2003, 2004, and 2005. As part of the audit the IRS requested copies of petitioners' individual income tax returns. Petitioners prepared Forms 1040X, Amended U.S. Individual Income Tax Return, for the taxable years 2003, 2004, and 2005 and personally delivered these returns to the IRS on August 19, 2008. Petitioners filed the amended returns because income from Sutphin was incorrectly reported on their originally filed tax returns. The following table illustrates the tax reported due by petitioners on their original returns compared with the tax reported due on their amended returns:

[*4]

| Year | Tax Reported (original return) | Tax Reported (amended return) | Increase in Tax Reported |
|------|------|------|------|
| 2003 | $12,614 | $25,748 | $13,134 |
| 2004 | 9,175 | 88,537 | 79,362 |
| 2005 | 9,436 | 111,982 | 102,546 |

Petitioners did not include payment with the amended returns for the increase in tax reported due.

On September 5, 2008, petitioners executed two Forms 872, Consent to Extend the Time to Assess Tax, extending the time for assessment of tax for the taxable years 2003 and 2004 until December 31, 2009. At a date not specified in the record, petitioners executed three Forms 872 for the taxable years 2003, 2004, and 2005, extending the time for assessment of tax until December 31, 2012. On September 30, 2008, the IRS opened an audit of petitioners' individual tax returns for the taxable years 2003, 2004, and 2005.

On August 25, 2010, pursuant to their request, petitioners received from the IRS a record of account concerning their individual income tax for the tax period ending December 31, 2008. The record of account provided information regarding the taxable year 2008, including: (1) the filing date of petitioners' 2008 Form 1040, U.S. Individual Income Tax Return (August 7, 2009); (2) a zero account balance; (3) transactions, payments, penalties, and interest related to the

[*5] filing of petitioners' 2008 tax return; and (4) an itemized summary of petitioners' 2008 tax return.

On August 25, 2011, respondent issued to petitioners an examination report from the audit of their individual tax returns for the taxable years 2003, 2004, and 2005. The following table illustrates petitioners' tax as determined by respondent in the examination report compared with the self-reported tax liabilities in petitioners' amended returns:

| Year | Tax Reported (amended return) | Tax Due (examination report) | Increase |
|------|------|------|------|
| 2003 | $25,748 | $26,377 | $629 |
| 2004 | 88,537 | 90,285 | 1,748 |
| 2005 | 111,982 | 112,093 | 111 |

The tax liabilities determined in the examination report were higher than the tax liabilities that petitioners self reported on their amended returns because of adjustments unrelated to Sutphin (e.g., unreported interest income, deduction for health insurance, exemptions, etc.).

On September 16, 2011, petitioners paid in full all tax liabilities identified in the examination report. On November 7, 2011, respondent issued to petitioners Notices CP22E for the taxable years 2003, 2004, and 2005.[3] On November 8,

--------

[3]The notices for 2003, 2004, and 2005 showed an "Increase in interest" of $7,127.77, $36,257.73, and $34,307.61, respectively. Each notice requested that

(continued...)

**[*6]** 2011, petitioners paid the interest assessed in the Notices CP22E for the taxable years 2003, 2004, and 2005.

On June 25, 2012, petitioners filed a Form 843, Claim for Refund and Request for Abatement, requesting interest abatement from December 31, 2008, to October 16, 2011, pertaining to the taxable years 2003, 2004, and 2005. By letter dated June 12, 2013, respondent notified petitioners that the Form 843 was being forwarded to the IRS' interest abatement coordinator.

On October 31, 2013, respondent issued to petitioners a letter stating that their interest abatement claim for the taxable years 2003, 2004, and 2005 was not allowed because "[t]here was not unreasonable error or delay relating to the performance of a ministerial or managerial act in processing the examination of your return." On May 2, 2014, respondent issued to petitioners a letter stating that the interest abatement claim for the taxable years 2003, 2004, and 2005 was being denied. On May 30, 2014, respondent issued to petitioners a final determination disallowing petitioners' interest abatement claim in full for the taxable years 2003, 2004, and 2005. The final determination states: "We did not find any errors or delays on our part that merit the abatement of interest in our review of available

---

[3](...continued)
petitioners pay the amount of interest by November 28, 2011.

**[\*7]** records and other information for the period from December 31, 2008 to October 16, 2011." Petitioners timely filed a petition with this Court disputing respondent's final determination.

OPINION

Interest on a Federal income tax deficiency generally accrues at the rate specified by section 6621 from the last date prescribed for payment until the date on which the tax is paid. Sec. 6601(a). However, section 6404(e)(1) authorizes the IRS to abate the assessment of interest in some situations. Section 6404(e)(1) provides:

> (1) In general.--In the case of any assessment of interest on--
>
> > (A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, or
> >
> > (B) any payment of any tax described in section 6212(a) to the extent that any unreasonable error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial or managerial act,
>
> the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

**[\*8]** Congress intended for the Commissioner to abate interest under section 6404(e) "where failure to abate interest would be widely perceived as grossly unfair" and did not intend abatement to "be used routinely to avoid payment of interest".  H.R. Rept. No. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. No. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

A ministerial act is a procedural or mechanical act that does not involve the exercise of judgment or discretion by the Commissioner.  Sec. 301.6404-2(b)(2), Proced. & Admin. Regs.  A managerial act is an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel.  Sec. 301.6404-2(b)(1), Proced. & Admin. Regs.

Even when there has been an error or delay with respect to a ministerial or managerial act, the Secretary has discretion to decide whether to abate interest. Sec. 6404(e); see Grandelli v. Commissioner, T.C. Memo. 2008-55, 2008 Tax Ct. Memo LEXIS 55, at \*4-\*5.  We have jurisdiction to determine whether the failure of the IRS to abate interest was an abuse of discretion.  See sec. 6404(h)(1); Rule 280; Sandberg v. Commissioner, T.C. Memo. 2011-72, 2011 Tax Ct. Memo LEXIS 69.  The burden of proof is on the taxpayer, and to prevail the taxpayer must show that the IRS abused its discretion.  Rule 142(a); Sandberg v.

[*9] Commissioner, 2011 Tax Ct. Memo LEXIS, at *12. The IRS abuses its discretion if it exercised that discretion arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999). To meet this burden, the taxpayer must: (1) identify an error or delay by the Commissioner in performing a ministerial or managerial act; (2) establish a correlation between the error or delay and a specific period for which interest should be abated; and (3) show that he or she would have paid the tax liability earlier but for the error or delay. See sec. 6404(e); see also Paneque v. Commissioner, T.C. Memo. 2013-48, at *18; Braun v. Commissioner, T.C. Memo. 2005-221, 2005 Tax Ct. Memo LEXIS 221, at *15-*19.

Petitioners argue that they were misled by the IRS concerning their outstanding tax liabilities for the taxable years 2003, 2004, and 2005 because they requested an account transcript in 2010 and "received a 'Record of Account' showing a zero balance through December 31, 2008". Petitioners argue that the record of account showing a zero balance is a "ministerial act and error by the examining officer" and the error "justif[ied] petitioner[s'] belief that all prior tax liabilities had been paid." Accordingly, petitioners argue that they are

**[*10]** entitled to interest abatement for the timeframe of December 31, 2008, to October 16, 2011.[4]

Petitioners cite Douponce v. Commissioner, T.C. Memo. 1999-398, 1999 Tax Ct. Memo LEXIS 453, to support their contention that respondent provided inaccurate information concerning their account balance, which they relied on. In Douponce the taxpayer called the IRS to ascertain his outstanding tax balances for the taxable years 1988, 1990, and 1991. Id., 1999 Tax Ct. Memo LEXIS 453, at *3. An employee of the IRS informed the taxpayer that the following amounts remained outstanding: zero for 1988; $2,196 for 1990; and $2,492 for 1991. Id. On May 30, 1996, the taxpayer paid the balances for 1990 and 1991. Id. On November 4, 1996, the Commissioner notified the taxpayer (by issuing a notice of intent to levy) that he owed additional interest of $676 with respect to his taxable year 1988. Id. at *4. We held that the Commissioner abused his discretion in not abating interest concerning the taxable year 1988 that accrued from May 30, 1996, to November 4, 1996. Id. at *8. In doing so, we stated:

> [The taxpayer] asked an employee of [the IRS] what the "total amount due" was for 1988, 1990, and 1991. [The IRS'] employee told [the taxpayer] the total amount due, and [the taxpayer] promptly paid

---

[4]In a typewritten attachment to the Form 843, petitioners explain that three months is a "reasonable time for review" by the IRS of their amended tax returns, and therefore interest should be abated beginning on December 31, 2008.

[*11] those amounts. However, the employee did not include all of the accrued but unassessed interest in the amounts given to [the taxpayer]. [The taxpayer] promptly discharged his liability for interest when he was notified of it on November 4, 1996. It is reasonable to assume the only reason for the delay of in excess of 5 months was caused by [the IRS'] failure to tell [the taxpayer] the correct amounts due when [the taxpayer] requested that information on May 9, 1996.

Id. at *7.

Petitioners "compare the Record of Account provided by the IRS to petitioners on August 25, 2010, * * * to the incorrect 'total amount due' given by an employee in Douponce." We disagree and find petitioners' case distinguishable from Douponce on the facts. The taxpayer in Douponce called the appropriate IRS service center and inquired about his balance due for the taxable year 1988, and an IRS employee incorrectly informed the taxpayer that there was no outstanding balance. Douponce v. Commissioner, 1999 Tax Ct. Memo LEXIS 453, at *3. However, unlike the taxpayer in Douponce, petitioners requested information concerning the taxable year 2008 and received from the IRS a record of account pertaining only to that taxable year. The record of account clearly provides that it is for "TAX PERIOD: Dec. 31, 2008" and sets forth transactions and summaries pertaining to petitioners' filed Form 1040 for the taxable year 2008. The record of account does show a zero balance, however, this balance

[*12] concerns only petitioners' taxable year 2008 and has no relevance to the outstanding tax liabilities for the taxable years 2003, 2004, and 2005.  Nothing in that record of account applies to any taxable year other than the taxable year 2008, and we find petitioners' professed reliance on this document to be unreasonable.

Petitioners also argue that respondent failed to issue a notice of balance due within a reasonable timeframe after the filing of their amended returns for the taxable years 2003, 2004, and 2005.  Petitioners argue that respondent's failure to perform this "critical ministerial act" caused interest to compound on petitioners' account from September 30, 2008 (when the IRS began the audit of petitioners' individual returns) to August 25, 2011 (when the IRS issued the examination report), without their knowledge.  We disagree.  The interest accrued on petitioners' account because they knowingly failed to pay the large amount of tax reported on their amended returns.

The record establishes that a significant aspect of the delay in payment on petitioners' account is attributable to petitioners.  See sec. 6404(e)(1)(B). Petitioners filed amended returns for the taxable years 2003, 2004, and 2005 on August 19, 2008.  These amended returns reported corrected tax liabilities substantially higher than the tax liabilities petitioners reported on their original tax returns, but only $2,488 less than the tax liabilities ultimately determined as a

[*13] result of respondent's audit. Despite the significant increase of tax liabilities reported on their amended returns, petitioners did not submit payment with the filing of the amended returns. Petitioners self reported their income tax liability on their amended returns for the taxable years 2003, 2004, and 2005 and chose to forgo making payments. See Hill v. Commissioner, T.C. Memo. 2010-200, aff'd, 436 F. App'x 410 (5th Cir. 2011). On brief petitioners contend that they intended to pay the tax liabilities that were self reported on the amended returns and had the capability to do so, but there is no credible evidence to explain why they decided to forgo payment of these liabilities.[5] We find that petitioners' decision not to include payment with the filing of their amended returns reflects a conscious decision on their behalf not to satisfy their Federal income tax liabilities until the conclusion of respondent's audit. We are unable to conclude that any delay in payment on petitioners' account was not due in significant part to their own act of nonpayment. See sec. 6404(e)(1)(B). Thus, we hold that there was no abuse of

---

[5]In the Form 843 petitioners assert that they believed payment was included with the filing of the amended returns as it was their "normal practice to include payment when filing a return". Petitioners assert that "[t]he IRS agent did not inform * * * [us] that checks or any items were missing from these amended returns." We simply do not believe that petitioners thought that they paid the large amount of additional tax reported on their amended returns.

[*14] discretion by respondent in denying petitioners' claim for interest abatement for the taxable years 2003, 2004, and 2005.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.